UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ANTOINE GEE

       Plaintiff,

  -v-                                                                  No. 19-CV-03622-LTS-SDA

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION, DOCTOR ROUL RAMOS,
DEPUTY WARDEN MICHELLE NALLETT, and
THE CITY OF NEW YORK

       Defendants,

-------------------------------------------------------------x

## MEMORANDUM ORDER

Plaintiff Antoine Gee ("Mr. Gee" or "Plaintiff"), proceeding pro se, brings this action against New York City Health and Hospitals Corporation ("HHC"), Doctor Roul Ramos ("Dr. Ramos"), Deputy Warden Michelle Nallett ("Warden Nallett"), and the City of New York (the "City") (collectively, "Defendants") pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that Defendants violated his federal constitutional rights by failing to provide him with adequate medical care while he was in the custody of the New York City Department of Corrections ("DOC").  (Complaint ("Compl."), Docket Entry No. 2.)  Defendants move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Docket Entry No. 21.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

The Court has considered the parties' submissions carefully and, for the following reasons, Defendants' motion is granted in its entirety.

BACKGROUND

The following summary of relevant facts is drawn from the Plaintiff's Complaint, the well-pleaded factual content of which is taken as true for purposes of this motion practice, and his response in opposition to Defendants' motion to dismiss, which is comprised principally of supplemental documentary evidence.[1]  (Response in Opposition to Motion to Dismiss the Complaint ("Pl. Resp."), Docket Entry No. 28.)

Plaintiff Antoine Gee was a pretrial detainee in DOC custody from approximately March 22, 2019, to April 6, 2019.  (See Compl. at 2, 4; see also Pl. Resp. at 85[2].)  Mr. Gee was initially housed in the Manhattan Detention Center (the "MDC") and later transferred to the North Infirmary Command ("NIC") on Rikers Island.  Mr. Gee suffers from various medical conditions, including osteopenia and arthritis, and one of his legs has been partially amputated.  (See Pl. Resp. at 43.)  Mr. Gee alleges just seven facts in his Complaint: that (i) he was denied pain medication by Dr. Ramos at the NIC; (ii) he was denied a double mattress for his arthritis; (iii) the mattress that he was provided was a yoga mat; (iv) he was "denied Medical Housing during [his] intake process by the [DOC];" (v) he was denied medical care at the NIC; (vi) he was denied "proper medical transportation;" and (vii) he was denied medical footwear for his prosthetic leg.  (Compl. at 4–5.)

---

[1]    In deciding Defendants' motion to dismiss this pro se complaint, it is appropriate for the Court to take into account the factual allegations contained in Plaintiff's response papers. See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").

[2]    The cited page numbers refer to those generated by the Court's electronic filing system.

In response to Defendants' motion to dismiss, Mr. Gee submitted supplemental documentary evidence, including medical records and grievance and accommodation request forms. (See Pl. Resp. at 2.) The information in these documents, insofar as it relates to the "Facts" identified in the Complaint, is summarized below.

Denial of Medical Housing ("Fact #4")

Mr. Gee requested to be transferred from the MDC to the NIC on March 26, 2019. (See Accommodation Request, 03/26/2019, Pl. Resp. at 36.) Mr. Gee was moved the NIC on or about March 29, 2019. (Compare Medication Order, 03/28/19, Pl. Resp. at 87 (listing "location" as "MDC"); with HHC Appt. Form, 03/29/2019, Pl. Resp. at 81 (listing "appointment facility" as the NIC.)

Denial of Medical Care and Pain Medication ("Facts #1 and #5")

Mr. Gee made frequent requests for medical attention and medication to address his chronic pain and difficulty walking and sleeping. (See, e.g., Grievance Statement Form, 03/20/2019, Pl. Resp. at 65; Grievance Statement Form, 04/02/19, Pl. Resp. at 58; Accommodation Request, 4/10/19, Pl. Resp. at 43; Grievance Statement Form, 04/12/2019, Pl. Resp. at 53; Grievance Statement Form, 04/19/2019, Pl. Resp. at 45.) Throughout the relevant time period, Mr. Gee was treated regularly by HHC medical staff. (See HHC Appt. Forms, Pl. Resp. at 70–81.) Mr. Gee was provided or offered medications to accommodate his pain on multiple occasions. (See, e.g., HHC Appt. Form, 03/29/2019, Pl. Resp. at 81; HHC Appt. Form, 04/03/2019, Pl. Resp. at 79; Medication Order, 04/08/2019, Pl. Resp. at 86; HHC Appt. Form, 04/13/2019, Pl. Resp. at 70.) On at least two such occasions, Mr. Gee refused pain medications offered by the medical staff. (HHC Appt. Form, 04/03/2019, Pl. Resp. at 79; HHC Appt. Form, 04/06/2019, Pl. Resp. at 77.) Additionally, in response to his complaint of pain and difficulty

walking, Mr. Gee was given a referral for physical therapy.  (See HHC Appt. Form, 04/03/2019, Pl. Resp. at 80.)

Plaintiff's supporting documents reflect that Dr. Ramos was minimally involved in Plaintiff's treatment at the NIC.  In a letter to the "Prisoners Rights Project," Mr. Gee asserted that he had spoken with Dr. Ramos and had informed Dr. Ramos that he was experiencing pain related to his amputated leg, arthritis, and osteopenia.  (Pl. Resp. at 91.)  In a DOC Grievance Statement Form, Mr. Gee claimed that the "head doctor," who Plaintiff alleges is Dr. Ramos, would not give him medications for his pain.  (Grievance Statement Form, 04/19/2020, Pl. Resp. at 45; Compl. at 3.)  Other than Plaintiff's own statements, the only documentation of Dr. Ramos's involvement in Plaintiff's treatment is an HHC appointment form reflecting that Dr. Ramos personally retrieved a charger for Mr. Gee's prosthetic leg.  (See HHC Appt. Form, 04/11/2019, Pl. Resp. at 72.)

Denial of Medical Transportation ("Fact #6")

In an undated Grievance Statement Form, Mr. Gee reported that, on April 2, 2019, he was denied accessible medical transportation for an April 4, 2019, court appearance. (Grievance Statement Form, 04/02/2019, Pl. Resp. at 58.)

Denial of Medical Footwear ("Fact #7")

Mr. Gee initially requested medical footwear on March 26, 2019, while he was housed at the MDC.  (Accommodation Request, 03/26/2019, Pl. Resp. at 36.)  Mr. Gee made the same request again on April 8, 2019, while at the NIC, and was provided with the requested footwear the next day.  (See Grievance Disposition Form, 04/09/2019, Pl. Resp. at 62.) Moreover, in a Grievance Statement Form dated May 2, 2019, Mr. Gee alleged that, on May 1,

2019, he tripped and fell because "security staff" had confiscated his supportive footwear. (Grievance Statement Form, 05/02/2019, Pl. Resp. at 47.)

Denial of a Double Mattress ("Facts #2 and #3")

Mr. Gee requested a double mattress on April 10, 2019, and was notified by a member of the medical staff that same day that double mattresses were not permitted. (Accommodation Request, 04/10/2019, Pl. Resp. at 43; HHC Appt. Form, 04/10/2019, Pl. Resp. at 74.)

Discrimination Claims

Mr. Gee's supporting documents contain three separate claims that his "disability [was] being discriminated against" based on defendants' alleged failure to accommodate his various medical requests. (Pl. Resp. at 41, 47, 66.)

DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Complaints filed by pro se plaintiffs like Mr. Gee are held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). A pro se complaint "must be construed liberally to raise the strongest arguments it

suggests." Walker, 717 F.3d at 124 (internal quotations and citations omitted). However, "a pro se complaint must [still] state a plausible claim of relief." Id. (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)).

Section 1983 Claim

In order to prevail on a claim under Section 1983, a plaintiff must establish that (1) the defendants were acting under color of state law and (2) their actions deprived the plaintiff of a constitutional right. Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1980)). The Court construes Plaintiff's Complaint and his response in opposition to Defendants' motion to dismiss as alleging that the Defendants have violated his substantive due process rights by being deliberately indifferent to his medical conditions.

Defendants do not contest that they were acting under color of state law. See McNair v. Harlem Hosp. Med. Dir., No. 19 Civ. 0203 (CM), 2019 WL 2176299, at *2 (S.D.N.Y. May 17, 2019) (citing Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983)) ("As a municipal corporation, HHC . . . and [its] employees are state actors for the purposes of [Section] 1983."). Defendants argue, however, that Plaintiff has not adequately alleged that they deprived him of a constitutional right.

*Personal Involvement*

Defendants contend that Plaintiff has failed to allege sufficiently that Warden Nallett and Dr. Ramos were personally involved in the constitutional violations alleged. (Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Def. Br."), Docket Entry No. 22, at 8-9.) In order to demonstrate that Defendants' actions deprived Plaintiff of a constitutional right, Plaintiff must allege specific facts concerning each Defendant's personal involvement in the alleged deprivations. See Wright v. Smith, 21 F.3d 496, 501 (2d

Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). Plaintiff cannot rely on the doctrine of respondeat superior to show personal involvement. Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973). Instead, a supervisory defendant may be found to be personally involved in a Section 1983 violation upon a showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright, 21 F.3d at 501).

Plaintiff's Complaint lists Warden Nallett as a defendant under the "Defendant Information" section, but the Complaint is devoid of any other reference to Warden Nallett. The documentary evidence Plaintiff filed in opposition to the motion to dismiss also lacks any mention of Warden Nallett. These documents do not contain any facts from which the Court could infer plausibly that Warden Nallett was involved—either directly or indirectly—in the constitutional violations alleged.[3] Therefore, the Court concludes that Plaintiff has failed to allege plausibly that Warden Nallett was personally involved in the alleged misconduct. Defendants' motion to dismiss is granted as against Warden Nallett.

However, Plaintiff has alleged sufficient personal involvement on Dr. Ramos's part. Plaintiff's response in opposition to Defendants' motion to dismiss supports a plausible

---

[3]   Several reasonable accommodation request forms state that copies would be forwarded to the "Deputy Warden for Programs." (See Pl. Resp. at 36, 38, 43.) However, there is no basis provided in the Complaint or the supplemental documents for an inference that Warden Nallett is the "Deputy Warden for Programs."

inference that Dr. Ramos spoke to Plaintiff personally, expressed that he would not give Plaintiff the requested medication, and was involved in acquiring a charger for Plaintiff's prosthetic leg. Construing this pro se complaint and additional documentary proffers liberally, the Court finds that Plaintiff has alleged sufficiently that Dr. Ramos was involved in the alleged constitutional violation.

*Deliberate Indifference*

Because Plaintiff has alleged sufficiently Dr. Ramos's personal involvement in the alleged violations, the Court turns to the substance of Plaintiff's due process claim. Defendants contend that Plaintiff's claims of constitutionally inadequate medical care must be dismissed because Plaintiff has failed to allege (i) an objectively serious medical condition or harm and (ii) that Defendants acted with deliberate indifference. (Def. Br. at 6-8.)

Pretrial detainees may challenge the conditions of their confinement under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, because a pretrial detainee cannot be punished. Darnell v. Pineiro, 849 F.3d 17, 29 (2d. Cir. 2017) (citations omitted). To establish a due process claim for inadequate medical care under Section 1983, Plaintiff must show that Defendants acted with deliberate indifference to his medical needs. See Darnell, 849 F.3d at 29; see also Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003). Such "deliberate indifference" has two elements. See Darnell, 849 F.3d at 29. First, Plaintiff must establish an objectively serious deprivation by showing that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." Id. at 30. Second, the "subjective," or mens rea, element requires Plaintiff to establish that Defendants were deliberately indifferent to the objectively serious conditions, by showing that "the defendant-official acted intentionally to impose the alleged

condition[s], or recklessly failed to act with reasonable care to mitigate the risk that the condition[s] posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition[s] posed an excessive risk to health or safety." Id. at 35. However, neither mere negligence nor "disagreement over the proper treatment" will be sufficient to support a viable constitutional claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Plaintiff is an amputee who suffers from osteopenia, arthritis, and pain related to his amputated leg. Plaintiff claims that Defendants' failure to care for these medical conditions by providing him with pain medication, a double mattress, and medical footwear caused him extreme and persistent pain, prevented him from walking or sleeping properly, and caused him to slip and fall, which exacerbated pre-existing conditions. Construing Plaintiff's allegations liberally, the Court concludes that the alleged effects of Defendants' failure to manage Plaintiff's painful conditions, when viewed in the aggregate, plausibly describe an objectively serious deprivation of medical care that posed an unreasonable risk of harm to Plaintiff's health. See Darnell, 849 F.3d at 30 (stating conditions of confinement may be aggregated to give rise to a constitutional violation where they have mutually enforcing effects "that produce[] the deprivation of a single, identifiable human need").

Although Plaintiff has alleged sufficient facts to satisfy the objective prong of the due process test, Plaintiff has failed to allege facts to satisfy the subjective prong—that Defendants acted with deliberate indifference. Dr. Ramos is the only Defendant who Plaintiff alleges had any involvement in Plaintiff's treatment. However, Dr. Ramos's actions as documented in Plaintiff's submissions were, at most, negligent—there is no allegation that Dr. Ramos acted intentionally to deprive Plaintiff of medical care, and Plaintiff's documentary

evidence shows many instances when HHC medical staff provided Plaintiff with timely, responsive treatment for his pain and related medical conditions.  HHC medical staff prescribed Plaintiff with several medications and physical therapy.  On multiple occasions, Plaintiff refused medication offered by HHC medical staff.  After Plaintiff requested medical footwear at the NIC, he received it the next day.  The question of whether this medical treatment was proper "is a classic example of a matter for medical judgment" that cannot establish deliberate indifference.  Cf. Estelle v. Gamble, 429 U.S. 97, 107 (1976); Chance, 143 F.3d at 703 ("[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim").  Plaintiff has not alleged that any Defendant or HHC staff member acted intentionally to deprive him of adequate medical care, nor has he proffered facts sufficient to support an inference that any Defendant was reckless with regard to his medical needs.  Therefore, the Court cannot plausibly infer that Defendants acted with deliberate indifference to Plaintiff's serious medical needs, and Plaintiff's Section 1983 claim must be dismissed.

Monell Liability

Defendants assert that Plaintiff's Section 1983 claim against the City should be dismissed because Plaintiff failed to allege that he was injured as a result of an official policy or custom as required by Monell v. Department of Social Services, 436 U.S. 658 (1978).  (Def. Br. at 5-6.)  Here, the Court has concluded that Plaintiff's Complaint fails to state a claim for inadequate medical care.  Because Monell liability presumes that an underlying constitutional violation occurred, the Court cannot conclude that Plaintiff has stated a claim against the City of New York or the HHC.[4]  See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)

---

[4]   Section 1983 claims against municipal corporations, such as the HHC, are analyzed under the Monell framework.  Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983) ("a plaintiff suing a municipal corporation, such as HHC, under 42 U.S.C. § 1983

(affirming district court decision not to address Monell claim "[b]ecause the district court properly found no underlying constitutional violation"). Therefore, Defendants' motion to dismiss Plaintiff's Section 1983 claims is granted as against the City and the HHC.

Discrimination Claims Under the ADA and the Rehabilitation Act

Some of the documents Plaintiff filed in opposition to Defendants' motion to dismiss refer to "discrimination" in connection with Plaintiff's disability. As such, the Court will analyze Plaintiff's potential discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794.

Individuals with disabilities are protected by Title II of the ADA and Section 504 of the RA. See Gowins v. Greiner, No. 01 Civ. 6933 (GEL), 2002 WL 1770772, at *9 (S.D.N.Y. July 31, 2002). To state a claim under Title II of the ADA, a plaintiff must demonstrate that "(1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity which provides the service, program or activity is a public entity." Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995) (internal quotation marks omitted). Similarly, to state a claim under Section 504 of the RA, a plaintiff must show that (1) he or she is a "handicapped person" under the Act; (2) he or she is "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered; (3) he or she is being excluded from participation or enjoyment solely by reason of his or her disability; and (4) the entity denying the plaintiff's participation or enjoyment receives federal financial assistance. Id. at 1036.

---

must prove that the constitutional wrong complained of resulted from the corporation's official policy, custom, ordinance, regulation, or decision").

As an amputee, Plaintiff may establish that he is a qualified individual within the meaning of the ADA and RA. 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20). However, Plaintiff has failed to allege facts from which the Court could plausibly infer that Defendants' denial of medical care or accommodations was motivated by discriminatory animus.

Plaintiff's submissions show that members of the HHC medical staff regularly treated and addressed Plaintiff's medical conditions. They also show that Defendants promptly responded to Plaintiff's requests for medical housing and footwear. The prompt and responsive nature of Defendants' treatment makes it implausible that Defendants acted out of discriminatory animus against Plaintiff. Plaintiff has failed to allege any objective indicator that Defendants harbored ill will towards Plaintiff or denied him the benefits of any program because of his disability. Therefore, to the extent that Plaintiff's Complaint asserts claims under the ADA and RA, those claims are dismissed.

Defendants' Procedural Grounds

Defendants assert that Plaintiff's Complaint fails to satisfy the pleading requirements of FRCP 8(a) and that Plaintiff has abandoned certain claims by failing to respond to arguments made in their motion to dismiss. Given the context of this pro se complaint, and in light of the fact that Plaintiff's Complaint fails to state a claim upon which relief may be granted, the Court need not address these arguments. See Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (stating it is the jurisprudential preference of the Second Circuit to adjudicate "cases on their merits rather than on the basis of formalities").

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff Antoine Gee's complaint is granted. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal

from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purposes of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully requested to enter judgment in Defendants' favor and close this case.

This Memorandum Opinion and Order resolves docket entry no. 21.

SO ORDERED

Dated: New York, New York
July 2, 2020

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

**Copy mailed to:**
Antoine D. Gee
NYSID: 01041691M
B&C No. 3491901703
North Infirmary Command
15-00 Hazen Street
East Elmhurst, NY 11370